FILED
2012 Jan-05  PM 03:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

TERESA G. WISE,

      PLAINTIFF,

VS.                          CASE NO.: CV-11-J-1939-J

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405.  The plaintiff is seeking reversal or remand of a final decision of the Commissioner of Social Security.   All administrative remedies have been exhausted.

### Procedural Background

The plaintiff applied for disability insurance benefits due to Crohn's disease,[1] arthritis, undetermined autoimmune disease, bowel stricture from scar tissue, frequent diarrhea with incontinence of stool, depression, multiple arthralgias and myalgias which cause insomnia and exhaustion, visual problems, headaches, osteoarthritis, joint pain, abdominal pain and depression (R. 145).  Her initial application was denied (R. 98-104) and the plaintiff requested a hearing in front of an administrative law judge (ALJ),which was subsequently held on January 27, 2010 (R. 58).  The ALJ thereafter found that the plaintiff was not under a disability at any time through the date of the decision (R. 16-27).  The plaintiff's request for administrative review of

----

[1]According to the National Institute of Health,

Crohn's disease is a form of inflammatory bowel disease (IBD). It usually affects the intestines, but may occur anywhere from the mouth to the end of the rectum (anus).

While the exact cause of Crohn's disease is unknown, the condition is linked to a problem with the body's immune system response.

Normally, the immune system helps protect the body, but with Crohn's disease the immune system can't tell the difference between normal body tissue and foreign substances. The result is an overactive immune response that leads to chronic inflammation. This is called an autoimmune disorder.

People with Crohn's disease have ongoing (chronic) inflammation of the gastrointestinal tract. Crohn's disease may occur in any area of the digestive tract. There can be healthy patches of tissue between diseased areas. The inflammation causes the intestinal wall to become thick.

There are different types of Crohn's disease, depending on the part of the gastrointestinal tract that is affected. Crohn's disease may involve the small intestine, the large intestine, the rectum, or the mouth.

http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001295/

the ALJ's decision by the Appeals Council was denied on April 8, 2011 (R.1-3).  The ALJ's decision thus became the final order of the Commissioner of Social Security. *See* 42 U.S.C.§ 405(g).  This action for judicial review of the agency action followed (doc. 1).  The plaintiff argues that the ALJ's residual functional capacity findings are not based on substantial evidence (doc. 9).

The court has considered the record and the briefs of the parties.  For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for calculation of the plaintiff's benefits.

### Factual Background

The plaintiff was born on September 14, 1956, making her 53 at the time of her hearing (R. 81).  She has an associate's degree (R. 81) and has spent the previous 25 years working as a registered nurse (R. 65), except for a period of time when she owned a book store (R. 85).  The plaintiff's past work as a nurse is classified as medium and skilled, and as a retail store owner was medium and skilled (R. 85-86).  According to the Vocational Expert (VE) nursing skills transferred only to other medium jobs and while retail store owner had transferrable skills, there would be nothing that would transfer to a level below medium (R. 86-87).

The plaintiff testified that she had so much pain from Crohn's disease and muscle pain that she was not able to work 12 hour shifts (R. 65).  She also has pain

3

in her lower back, shoulders and neck (R. 65).  She also has pain in her knees and feet all the time, as well as numbness sometimes in her feet (R. 65, 76).  Her pain goes as high as an 8 every day, she can sit for about 15 minutes before she needs to stand up and can stand for about 10 to 15 minutes (R. 66).  She can walk about 300 feet before she is in pain (R. 66).  The pain in her shoulders also limits her use of her arms, rendering her unable to lift more than 5 or 10 pounds (R. 67).  She has trouble sleeping at night (R. 67).  She has issues with Crohn's disease flare ups three or four times a year, sometimes requiring hospitalization[2] (R. 67-68).  According to plaintiff, after a recent hospitalization for this, she learned she would have to have surgery, and is having to put all her food in a blender (R. 69, 74).  The plaintiff also testified she has carpal tunnel syndrome, meaning she can not use her hands for more than 30 minutes to an hour (R. 69, 73).  Although she has problems with both hands, her right is worse than her left (R. 72).  Her doctor gave her splints to use, and she has had physical and aqua therapy (R. 69, 73).  She uses the splints two to three days a week, for three to four hours a day (R. 73-74).  The plaintiff also takes Lyrica[3] and has been seen by a rheumatologist, who told her she did not have rheumatoid arthritis, but she

---

[2]The plaintiff further explained that she had been symptom free from Crohn's disease for many years but after having her gall bladder removed, began to have flare ups (R. 68).  During a flare up, she has excruciating pain in her abdomen and throws up (R. 68).

[3]Lyrica is commonly used for fibromylgia and other types of pain including neuropathy. *See e.g.,* Lyrica.com.

did have fibromyalgia causing most of her pain (R. 69).   Because of the side effects of Lyrica, the plaintiff's dose had to be reduced (R. 70).

The plaintiff's son does most of her grocery shopping for her (R. 72).  She testified she has trouble climbing stairs, and lifting, and was given weight restrictions on lifting by her family physician of twenty years when she first stopped working (R. 78-79).  The plaintiff was told by Dr. Dewitt, who saw her during her January 2010 hospitalization, that she would need a small bowel resection (R. 79).  All of her symptoms are made worse by stress (R. 80).  She also stated that the combination of Lyrica and Flexeril was helping with her pain (R. 80).

The plaintiff has a valid driver's license and drives herself a couple of times a week (R. 82).  She has not tried to return to work since she stopped in January of 2008 (R. 82).  When her 8 weeks of FMLA leave expired, the plaintiff resigned from her job (R. 167).  In her responses to the daily activities questionnaire, the plaintiff stated her husband had to help her wash her hair because she could not hold her arms up long enough to do so on her own (R. 164).

During the hearing, the ALJ questioned the VE about medium level jobs with restrictions against pushing or pulling with her arms, no climbing, no pushing or pulling with her legs, only occasional bending, and the need for a temperature controlled environment (doc. 87).  The VE testified there would be work as a cashier,

a packager, and a machine feeder (R. 88).  In the light category with the same restrictions, there would be work of general office clerk, machine operator and tender, and inspector and tester (R. 88).  Lastly, at the sedentary level, there would also be work as a general office clerk, inspector, sorter, and production and table workers (R. 88).  The VE further testified that the proposed limitations would not allow for the plaintiff's previous work as a nurse (R. 89).  The ALJ then inquired whether the plaintiff's previous occupation as a store owner would allow for a  sit-stand option, and the VE replied that it would (R. 89).  No other medium level jobs would allow the plaintiff to sit and stand at will, and only the general office clerk position would allow for such an option at the light level (R. 90).  It would have no impact on the sedentary positions previously listed (R. 90).  A limitation to frequent use of her hands would further limit available jobs, and a limitation to occasional use of her hands would eliminate all previously identified jobs (R. 92-94). In response to a question from plaintiff's counsel, the VE testified that missing work for two weeks at a time due to Crohn's flare ups would preclude all employment (R. 96).

The relevant medical records contained in the file demonstrate that the plaintiff began to report significant problems to her long time treating physician, Dr. Keith, shortly before she stopped working.  Beginning in April 2007, the plaintiff's medical records reflect complaints of arthritis in her knees, shoulders, back, hips, and arms,

6

with her worst complaint concerning her right hand (R. 193). Medications for her hand pain were noted not to help (R. 192).

The plaintiff was hospitalized from July 31, 2007, to August 3, 2007, due to severe abdominal pain, from what was believed to be a small bowel obstruction, possibly secondary to adhesions and possible inflammatory bowel disease (R. 278, 280-281, 286, 291, 312). These records reflect that the plaintiff also had chronic tension headaches from neck pain (R. 292). Upon discharge, she was given the diagnoses of stricture of the ileocolic anastomosis, history of possible inflammatory bowel disease with Crohn's, and cervical degenerative joint disease (R. 289). At that time, she was given no specific limitations on her activities or diet (R. 290).

A record from October 2007 notes the plaintiff's August hospitalization due to problems with Crohn's disease (R. 192). She also complained of headaches and neck pain, so she was given Mobic (R. 191). In January 2008 x-rays and MRI of the plaintiff's neck and shoulders were ordered and she was referred to physical therapy (R. 191, 326). These records note she complained of joint pain as well recurrent gastrointestinal issues (R. 190-191). Dr. Keith recorded that the plaintiff also was worried about her malaise, fatigue, various aches and pains, and that other doctors were questioning whether Crohn's was a correct diagnosis at all (R. 190). She was prescribed Cymbalta, which did not help (R. 189-190).

7

The plaintiff was also seen by a neurologist due to her neck and shoulder pain, plus pain in her left arm and shooting pain down her right arm and into her right fingers (R. 327).  Low back pain radiating into her left leg was also noted (R. 327). Her medical history was noted to be positive for arthritis (R. 327).  She was given a diagnosis of chronic neck pain with bilateral arm involvement, with more recent onset of low back pain and left leg pain (R. 328).  X-rays of her cervical spine and shoulders were normal (R. 329-331). The MRI of her cervical spine noted degenerative changes at C5-C6 (R. 190, 332).

In February 2008 Dr. Keith noted that the plaintiff had been off work for four weeks, and opined "as bad as she feels with her arm and shoulder hurting as much as it is, it is not likely she will get back to work anytime soon.  We will fill out the FMLA forms later today" (R. 189). Dr. Keith referred the plaintiff to a rheumatologist (R. 189).   Two months later he noted that "[s]he is not doing well.  She still feels awfully bad with multiple myalgias, arthralgias, feet burning....[s]he is obviously quite uncomfortable...." (R. 385). He opined that her exam would suggest a neuropathy or myopathy, but of uncertain etiology (R. 385).  In May 2008 after a trial of Lyrica, the plaintiff was noted to be improved (R. 385).

The plaintiff was seen by Dr. Monica Crawford, a rheumatologist, in June 2008, due to a year of progressive polyarthralgia (R. 371).   The plaintiff reported

steadily worsening pain in her right hand, both feet, both shoulders, and left knee, as well as problems with parathesis in her feet[4] (R. 371). Lyrica was noted to be helping (R. 371). Upon examination, Dr. Crawford noted tenderness in both of plaintiff's hands, painful rotation of her hips, minimal foot pain in both feet, and significant muscle spasms in her cervical-thoracic junction paraspinal muscles (R. 372). Dr. Crawford opined the plaintiff had diffuse degenerative joint disease and carpal tunnel syndrome (R. 372). She prescribed Flexeril for the muscle spasms, naproxen for osteoarthritis, 12 weeks of aquatic therapy, and cock-up wrist splints for both arms for carpal tunnel syndrome (R. 372).

Upon follow up in October 2008, the plaintiff reported the aquatic therapy was helping for the joint pain in her legs, but she continued to have stiffness in her neck and paraspinal muscles (R. 369). No significant arthritis was noted from prior x-rays (R. 369). Upon examination, the plaintiff was again found to be tender over her cervical and lumbar paraspinal muscles, but she had a good range of motion in her hips, knees and ankles (R. 369). Dr. Crawford recommended that the plaintiff continue the aquatic therapy, and increased the Lyrica dosage to see if it relieved the

---

[4]"Parasthesia, which often is a symptom of fibromyalgia, is an abnormal sensation, particularly in the hands and/or feet, that can be described as crawling, prickling, tingling, burning, itching or numbness." *Somogy v. Commissioner of Social Security,* 366 Fed.Appx. 56, 58 n.4 (11th Cir.2010).

trigger point tenderness between plaintiff's shoulder blades and lower back (R. 369). She also told the plaintiff to continue using the wrist splints for carpal tunnel syndrome (R. 369).

Dr. Keith's records from November 25, 2008, note that Dr. Crawford ruled out rheumatoid arthritis and states "It (sic) guess it is fibromyalgia" (R. 384). He also noted headaches and blurred vision and concluded that "she is wished well and, at this point, I would say she is certainly continued to be completely and totally disabled" (R. 384).

The plaintiff was again seen in an emergency room for nausea and vomiting in January 2009 (R. 391-396). In April 2009 Dr. Keith's records reflect that plaintiff has "the myalgias and arthralgias .... [and] the intestinal problems that flare periodically" (R. 384).

In September 2009 the plaintiff was sent for a consultative examination to Dr. Bruce Romeo (R. 356). Dr. Romeo noted the plaintiff had a history of fibromyalgia, Crohn's disease with small bowel resection and hospitalization in 2007 for small bowel obstruction, carpal tunnel syndrome on the right treated with splint, hysterectomy and a negative neurological evaluation for neck and bilateral shoulder pain (R. 356). He concluded the plaintiff suffered from multifocal rheumatic pain without objectively identifiable etiology, and Crohn's disease in remission (R. 359).

He recorded that the plaintiff's range of motion in all joints was completely normal (R. 360-361), and opined the plaintiff could lift and carry 10 pounds continuously, 20 pounds frequently, and 50 pounds occasionally, with no limitations on her ability to sit, stand or walk (R. 362-363).  Further, he believed she was unlimited in the use of her hands and feet, and had no postural or environmental limitations (R. 365-366).

In the October 2009 records, Dr. Keith notes that the plaintiff is doing well on Lyrica and feeling good "except for her chronic myalgias" (R. 401). The plaintiff was again hospitalized in January 2010 and diagnosed with Crohn's disease flare, with stricture, fibromyalgia, nausea and vomiting, and partial small bowel obstruction (R. 409, 410, 415).  She was also noted to have a moderate in size hiatal hernia (R. 413). Those records note that fluid and liquid made the pain worse, and she was discharged on a regular diet (R. 406).

The ALJ concluded that plaintiff suffered from the severe impairments of Crohn's disease, fibromyalgia, and multifocal rheumatic pain without objectively identifiable etiology, but none of which met or equalled the requirements of any listed impairment (R. 22). The ALJ determined that the plaintiff's diagnosis of and treatment for carpal tunnel syndrome was neither a diagnosis of nor treatment for carpal tunnel syndrome and hence, the same was not a severe impairment (R. 22). The ALJ determined that the plaintiff's complaints of pain were not "fully credible

in light "of the medical history, the reports of the treating and examining practitioners, and the clinical findings...." (R. 23). The ALJ specifically refutes Dr. Keith's opinion that the plaintiff was disabled, based on the ALJ's personal determination that Dr. Keith's treatment records did not support this conclusion (R. 24). Hence, the ALJ gave Dr. Keith and his opinion little weight, in spite of his long term relationship with the plaintiff as her treating physician (R. 24). The ALJ decided his own conclusion was consistent with the state agency's non-examining consultants (R 24). Thus, the ALJ concluded that if the plaintiff complied with the limitations he gave her, she could return to her past relevant work as a retail store owner (R. 25-26). On that basis, the ALJ ruled that the plaintiff was not under a disability at any time through the date of the decision (R. 26).

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment she is unable to perform her previous work. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987). If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Id.*

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's

findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir.1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). This court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir.1993).

However, no such presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1235 (11th Cir.1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.1991). The Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

It is well established that the ALJ, in making a disability determination, must consider the combined effects of all impairments. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir.2002); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir.1991). If the claimant alleges multiple impairments, the claimant may be found disabled even though no single impairment is considered disabling. *Walker v. Bowen*, 826 F.2d 996 (11th Cir.1987).

## Legal Analysis

The ALJ determined the plaintiff retained the residual functioning capacity to perform a limited range of medium work. To reach this conclusion, the ALJ disregarded large portions of medical evidence, misrepresented other records and completely ignored plaintiff's treating physician's opinions. Most glaringly, the ALJ ignored the medical records finding the plaintiff suffers from fibromyalgia and is being treated for the same with Lyrica. He completely ignored the diagnosis of carpal tunnel syndrome, and then opined that the plaintiff could return to her "past relevant work" as a retail store owner,[5] in spite of her 25 year history of work as a registered nurse. He found that if the plaintiff complied with the limitations set forth by him,

---

[5]Implicit in such a finding would be a requirement that the plaintiff purchase a retail store so that she can return to her previous relevant work of "retail store owner." However, the ALJ provided no suggestions for where the plaintiff should obtain the funding to do so.

she could perform a limited range of medium work with no more than moderate pain, and hence, was not disabled.

The ALJ first discounted the plaintiff's diagnosis of carpal tunnel syndrome because she only "infrequently complained of carpal tunnel pain, and was treated for possible carpal tunnel syndrome with the prescription of wrist splints...." (R. 22). The ALJ provided no legal basis for his conclusion that infrequent complaints are insufficient for a "severe impairment" as that term has been defined by the Eleventh Circuit Court of Appeals or the Commissioner of Social Security. A "severe" impairment is one that causes more than a minimal limitation on a claimant's ability to function. See *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984). A "[c]laimant need show only that her impairment is not so slight and its effect not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir.1986). This inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. *Brady*, 724 F.2d at 920.

Limited use of her hands and the need for wrist splints satisfied the "more than minimal" requirement, no matter how infrequently the plaintiff's treating physicians deemed it necessary to record her complaints in their medical records. Dr. Crawford opined the plaintiff had diffuse degenerative joint disease and carpal tunnel syndrome (R. 372). This is a medical diagnosis. The ALJ's conclusion otherwise could only

be reached by completely ignoring the opinion of Dr. Crawford.  Given that the plaintiff told Dr. Crawford about her ailments, Dr. Crawford prescribed the use of wrist splints, and both Dr. Crawford and Dr. Keith knew at that point the plaintiff was not working, there would be no reason for further discussion of carpal tunnel syndrome in their records.  Notably, neither Dr. Keith nor Dr. Crawford disbelieved the plaintiff's complaints of hand pain.

The ALJ also concluded that because the plaintiff had good range of motion in her neck and no hand atrophy, and no abnormalities evident on x-ray, her statements concerning her impairments and their impact on her ability to work were not credible (R. 23).  He therefore found the plaintiff could engage in a limited range of medium work, and apparently should purchase a retail store so she can work as its owner (R. 26).

The court further finds the record devoid of substantial evidence to support the ALJ's decision with regard to the medical evidence.  No opinion regarding the plaintiff's physical abilities by Dr. Keith is in the record, other than his statement that "I would say she is certainly continued to be completely and totally disabled" (R. 384).  Dr. Keith further believed the plaintiff's complaints of myalgias and arthralgias to be severe enough that he referred the plaintiff to a rheumatologist, agreed with the proposed diagnosis of fibromyalgia and provided the plaintiff free samples of Lyrica,

because she was uninsured (R. 384).   Dr. Keith certainly never opined that the plaintiff was malingering.  However, the ALJ opted to give little weight to Dr. Keith's opinions because he noted the plaintiff did not need refills for Phenergan or Lortab" (R. 24).  Dr. Keith's record actually stated that  "... we will keep her on the Lyrica, advancing it, as noted to 100 mg qbs, some samples plus the prescription is provided. She does not need the Phenergan or Lortab refilled for right now, but we will do so if needed" (R. 385).  The court finds this medical record is merely evidence that the plaintiff did not need her prescriptions refilled at that particular moment, that Dr. Keith would provide her with a prescription for refills when she requested it, and that the plaintiff took little Lortab because "it makes her feel uncomfortable" (R. 385). Nothing in this medical record supports a conclusion that the plaintiff no longer needed Lortab for pain or Phenergan for nausea.

When evaluating an applicant's claim for social security disability benefits, the ALJ must give "substantial weight" to the opinion of the applicant's treating physician "unless good cause exists for not heeding the treating physician's diagnosis." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir.2004).  Here, that good cause is lacking.  The Eleventh Circuit has defined "good cause" as: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was

17

conclusory or inconsistent with the doctor's own medical records. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997) (quotation marks and citations omitted). See also *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir.2011). Should an ALJ disregard or accord less weight to the opinion of a treating physician, the ALJ must clearly articulate his reasons, and the failure to do so is reversible error. *Id*. A general statement that the ALJ carefully considered all the testimony and exhibits is not sufficient. *Dempsey v. Commissioner of Social Sec.*, 2011 WL 6032952, 2 (11th Cir.2011), citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981).

The ALJ committed just such error here. He discounted the plaintiff's medical records reflecting her ongoing complaints of pain, and medical findings of trigger points, tenderness and muscle spasms, because the same did not appear on x-rays and the plaintiff's range of motion was not limited. The Eleventh Circuit has recognized that the "hallmark" of fibromyalgia is "a lack of objective evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir.2005). The lack of objective clinical findings is, at least in the case of fibromyalgia, therefore insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations. See e.g. *Somogy v. Commissioner of Social Security,* 366 Fed.Appx. 56, 64 (11th Cir.2010), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 108-109 (2nd Cir.2003)

(lack of physical abnormalities did not undercut claimant's complaints of pain since physical examinations of fibromyalgia patients "will usually yield normal results"). Given the nature of fibromyalgia, a claimant's subjective complaints of pain are often the only means of determining the severity of a patient's condition and the functional limitations caused thereby. *Somogy*, 366 Fed.Appx. at 64, citing *Green-Younger,* 335 F.3d at 105-108.

Nothing in the record supports the ALJ's conclusion that the plaintiff can perform a limited range of medium work, nor that the plaintiff has the means to purchase a retail store so that she can be employed as its owner.  While the Social Security regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work, *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir.2005), citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985), when the past relevant work is a book store owner, something more than a finding that the plaintiff can own another retail store is required.

From the record and hearing testimony, the plaintiff clearly considered her past relevant work to be that of a nurse.  She argues her excursion into business ownership was not substantial gainful employment.  Plaintiff's memorandum, at 11. Her earning records establish that in the period of time she owned a book store, her earnings from

the five year period of 1997-2001 totaled $4,400.00 (R. 118-120, 126). The Commissioner asserts that this is not a relevant inquiry, but rather whether the plaintiff established she could not perform this job as she previously did so or as it is generally performed in the national economy. Commissioner's memorandum, at 14. However, to be past relevant work, the same must have been substantial gainful activity ("SGA"). Relevant considerations in determining whether past work was SGA include earnings. 20 C.F.R. § 404.1574(a)(1)-(3). According to the regulations, in the calender years 1997-1999 earnings of less than $500.00 per month, and from 1999-2000, earnings of less than $700.00 per month, are considered not to be at the SGA level  *Id.*, at  § 404.1574 (b)(2), Table 1. That same section states at (3) that:

> If your average monthly earnings are equal to or less than the amount(s) determined under paragraph (b)(2) of this section for the year(s) in which you work, we will generally consider that the earnings from your work as an employee (including earnings from work in a sheltered workshop or comparable facility) will show that you have not engaged in substantial gainful activity. We will generally not consider other information in addition to your earnings except in the circumstances described in paragraph (b)(3)(ii) of this section.

20 CFR § 404.1574(b)(3).   Certainly, plaintiff's retail store owner earnings never reached the SGA level. Past relevant work is defined as work that was done within the past 15 years, that was substantial gainful activity, and that lasted long enough for an individual to learn to do it. 20 CFR § 404.1560.

Because plaintiff's retail store ownership never reached the SGA level, the ALJ erred in considering it to be "past relevant work."[6]  As such, upon his determination that the plaintiff could not return to her past relevant work as a nurse, had skills that only transferred to work as a nurse, and was closely approaching advanced age, the ALJ should have determined the plaintiff was disabled.  For him to conclude otherwise was error.  This error was compounded by the ALJ's determination that carpal tunnel syndrome is not a severe impairment.

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir.1984). A claimant may be entitled to an immediate award of benefits where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability.  *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir.1985).  For the reasons set forth above, this case is due to be reversed.

---

[6]In one of the few Social Security cases to address a similar work background, one court noted that "[t]he ALJ did not consider the retail ownership and work as past relevant work. Johnson did not receive any money for this work, so it was not substantial gainful activity." *Johnson v. Astrue,* 2010 WL 5463741, 1 (D.Neb.2010).  This court could not find any other case in which an ALJ found that a claimant could return to past relevant work as a retail store owner.

## IV. Conclusion

This court has the authority under 42 U.S.C. §405(g) to reverse the Commissioner's decision without remand, where, as here, the Commissioner determination is in plain disregard of the overwhelming weight of the evidence. *Davis v. Shalala*, 985 at 534; *Bowen v. Heckler*, 748 F.2d 629 (11th Cir.1984).

Based on the lack of substantial evidence in support of the ALJ's findings and the ALJ's failure to apply the proper legal standards, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED** this case is **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in accordance with this Opinion.

**DONE** and **ORDERED** this the 5th day of January, 2012.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE